# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**BOBBY EUGENE RODDY,**
a.k.a. Running Cougar Roddy,

      **Plaintiff,**

v.                                                   **Civil Action No. 5:08cv110**
                                                                  **(Judge Stamp)**

**TERESA WAID, MAJOR GREGG,
LT. BRIAN LANHAM, MATTHEW
HIPES, BRADLEY WARNER, JOHN
DOE, JANE DOE, JIM RUBENSTEIN,
DAVID BALLARD, PAUL LYTTLE,
C.J. RIDER, ROBERT VAMFOSSIEN
AND WILLIAM KINCAID,**

      **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

### I. Procedural History

On June 26, 2008, the *pro se* plaintiff initiated this case by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 against defendants Waid, Gregg, Lanham, Hipes, Warner and John and Jane Doe.

On July 1, 2008, the plaintiff was granted permission to proceed as a pauper and was assessed an initial partial filing fee of $3.66.

On August 20, 2008, the plaintiff filed an amended complaint for the purpose of adding the following additional defendants: Rubenstein, Ballard, Lyttle, Rider, Vamfossien and Kincaid.

Although a preliminary review had not been conducted, and service of process had yet to be ordered, on January 6, 2009, the defendants filed a Motion to Dismiss.

On January 14, 2009, the plaintiff filed a response to the defendants' motion and the

defendants filed a reply on January 28, 2009.

After the issuance of an Order to Show Cause, the plaintiff paid his initial partial filing fee on February 2, 2009.

On February 17, 2009, the plaintiff filed a "Statement of Facts" which contains numerous exhibits.

This case is before the undersigned for an initial review and report and recommendation pursuant to LR PL P 83.01, et seq., and 28 U.S.C.§§ 1915(e) and 1915A.

## II. Claims of the Parties

**A. The Complaint**

In the Complaint, the plaintiff asserts the following:

> The Defendant's (sic) are violating my Federal and State Constitutional Rights and also commiting (sic) a 'Racist Hate Crime against me and my Family because of are (sic) family Cherokee Indian Bloodline' and that are also 'commiting (sic) a Hate Crime because of my sentence and the Defendant's (sic) are also inflecting (sic) Mental Crulety (sic) on me and my family to (sic) by retaliating against me everyday' [over] the inmate grievance's (sic) I filed over my bad leg they are also 'commiting (sic) cruel and unusual punishment to me,' and 'commiting (sic) mental cruelty by retaliatsion (sic) against me over the Inmate Grievance Form's (sic) that I filed . . . , so please see al of these attach exhibit's (sic) for these 'statement of claim's' (sic) against the Defendant's (sic) in this case!!

Complaint at 3. This paragraph forms the entire basis of the plaintiff's complaint.

As relief, the plaintiff seeks damages in the amount of $250,000.00 per defendant, that the defendants be placed on supervised probation, criminal charges against each defendant, mental health classes for each defendant and all court costs and attorney fees. Complaint at 5.

Attached to his complaint, the plaintiff provides a "Statement of facts for Racist Hate Crime." See Dckt. 1, Ex. 1. In his statement of facts, the plaintiff asserts that on May 30, 2008, he approached Angie Booth about a note left in his cell. The note states "Chief um Baby Raper." The

2

plaintiff alleges that the note was written by defendant Hipes because another inmate, not named in the statement of facts, saw defendant Hipes in the plaintiff's cell on May 29, 2008. The plaintiff asserts that Ms. Booth wrote a violation report on Officer Hipes.

After the violation report was filed, the plaintiff asserts that he was retaliated against by "other" officers. Because of this retaliation, the plaintiff asserts that he filed a grievance with Major Gregg. The plaintiff asserts that Major Gregg verbally threatened him and told the plaintiff not to file any more grievances. The plaintiff alleges that he was later told by another officer that he should be careful because the plaintiff was about to have an "accident."

The remainder of the plaintiff's exhibits consists of complaints he filed with the United States Department of Justice, a copy of a Freedom of Information Act requests he made to the Warden and her response thereto, copies of institutional grievances filed by the plaintiff and the responses thereto, property seizure reports, a copy of 5 U.S.C. §§ 552 and 552(a) and various other documents. Pertinent to this case, are the various grievances the plaintiff filed with or against the named defendants.

In the first grievance, the plaintiff alleges that defendants Hipes and Warner retaliated against him for the filing of the violation report. See Ex. 3. That grievance was denied. Id.

In the second grievance, the plaintiff complains to defendant Lanham that on May 20, 2008, his right knee became dislocated and had to be put back in place in the chow hall. Ex. 4. The plaintiff also complains that he then had to wait to go to medical. Id. The plaintiff asserts that this was cruel and unusual punishment. Id. That grievance was denied. Id.

In the third grievance, the plaintiff complains again about the incident where his right knee became dislocated and his displeasure in Lt. Lanham's response. Ex. 5. That grievance was denied.

Id.

In the fourth grievance, the plaintiff complains that on May 26, 2008, defendants Hipes and Warner called him to the control desk three times in a matter of five minutes. Ex. 6. The plaintiff asserts that such action constitutes harassment and retaliation for the plaintiff's filing of grievances. Id. That grievance was denied. Id.

In the fifth grievance, the plaintiff complains that on May 24, 25, and 26, 2008, defendant Hipes was observed bringing contraband into the facility. Ex. 7. In his response to the grievance, defendant Hipes noted that he did not work on May 24 or 25, 2008, and could not have brought contraband into the facility on those days. Id. In addition, defendant Hipes asserted that even though he was working on May 26, 2008, he did not bring contraband into the facility on that date. Id. That grievance was investigated and denied. Id.

In the sixth grievance, the plaintiff complained that Lt. Lanham had defendants Hipes and Warner retaliated against him for filing grievances on May 27, 2008. Ex. 8. That grievance was denied. Id.

In the seventh grievance, the plaintiff asserted that on May 27, 2008, defendant Warner was seen reading a "dirty magazine" instead of fulfilling his duties and obligations as a correction officer. Ex. 9. That grievance was denied. Id.

In his eighth grievance, the plaintiff asserted that on May 28, 2008, defendants Hipes and Warner harassed and retaliated against him for the filing of grievances. Ex. 10. The allegations were denied by defendant Hipes on behalf of himself and defendant Warner. Id. The plaintiff's grievance was denied. Id.[1]

---

[1] The plaintiff's ninth grievance is not related to this case. In his ninth grievance, the plaintiff asserts that on August 26, 2007, he was called "running field mouse" by Officer Peppman. Ex. 11. That grievance

**B. The Amended Complaint**

In the amended complaint, the plaintiff merely adds additional defendants as previously noted. The plaintiff also attaches several other exhibits. However, those exhibits relate to the plaintiff's participation in the RSAP Program and his complaints related to religious discrimination the plaintiff allegedly suffered while incarcerated at the Mount Olive Correctional Complex.

**C. The Defendants' Motion to Dismiss**

In their motion to dismiss, the defendants assert that pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the plaintiff has failed to timely effectuate service of process. For that reason, the defendants request the dismissal of this case without prejudice.

**D. The Plaintiff's Response to the Defendants' Motion**

In his response to the defendants' motion, the plaintiff asserts that service of process in this case is within the control of the court and that his case should not be dismissed for the failure to timely serve process.

**E. The Defendants' Reply**

In their reply, the defendants' assert that the plaintiff is a seasoned litigator and should be well aware of the service requirements of Rule 4(m). The defendants further assert that the obligation to timely effect service of process lies with the plaintiff and no one else.

**F. The Plaintiff's Statement of Facts**

On February 17, 2009, the plaintiff filed a statement of facts in which he alleges that since the filing of this action, he has been subject to cell searching, had certain property taken and had his prayer pipe handled by correctional staff. Moreover, the plaintiff asserts that he was transferred to

---

was remanded to the Unit Supervisor for further action and the plaintiff was assured that appropriate action would be taken to address the plaintiff's concerns. Id.

the Huttonsville Correctional Center after filing grievances at St. Mary's Correctional Center concerning his religious rights. The plaintiff also asserts that he has been the focus of disciplinary infractions and then transferred again, to the Mt. Olive Correctional Complex. The plaintiff then alleges claims that in March 2008, the West Virginia Division of Corrections stopped all inmates from smoking in their cells or on the complex, which prevents him from practicing his religion. The plaintiff also asserts that he is being denied a plethora of other items that he alleges are needed to appropriately practice his religion. Finally, the plaintiff asserts that because the West Virginia Division of Corrections receives federal funding, it should comply with the requirements of RLUIPA, the Religious Land Use and Institutionalized Persons Act.

### III. Standards of Review

**A. Preliminary Review**

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals

should only be ordered when the legal theories are "indisputably meritless,"[2] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). This includes claims in which the plaintiff has little or no chance of success. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

**B. Motion to Dismiss**

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Services, Inc., v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## IV. Analysis

**A. The Defendants' Motion to Dismiss**

Pursuant to 28 U.S.C. § 1915(d), officers of the court shall issue and serve all process, and perform all duties where the plaintiff is permitted to proceed *in forma pauperis*. Moreover, Rule 4(c)(2)(B)(i) of the Federal Rules of Civil Procedure recognizes that the Court may direct service be effected by the United States Marshal Service. According to the Local Rules of this Court, when a prisoner plaintiff is granted *in forma pauperis* status, the Court makes a preliminary review of the complaint to determine whether the complaint should be served. See LR PL P 83.02. If the Court determines, upon screening, that the complaint should not be summarily dismissed, the Clerk is

---

[2] Id. at 327.

7

directed to issue summonses and the United States Marshal Service is directed to effect process.

In this case, the plaintiff was granted permission to proceed *in forma pauperis*. Thus, the Court was and is responsible for effecting service of process in this case. See Lindsey v. United States R.R. Retirement Board, 101 F.3d 444 (5th Cir. 1996) (finding that, once requested, a plaintiff proceeding *in forma pauperis* is entitled to court appointed service by the U.S. Marshals). However, because of the delay in obtaining the plaintiff's initial partial filing fee, the Court was unable to conduct a preliminary review of the file until this time. Thus, any failure to timely effect service of process in this case is through no fault of the plaintiff and dismissal of his case for that reason is not appropriate. Should the Court find, upon preliminary review, that service is appropriate, the Court will extend the time to serve process and direct the United States Marshal to do so. See Pardazi v. Cullman Medical Center, 896 F.2d 1313, 1317, n. 2 (11th Cir. 1990) (failure to comply with Rule 4(j) (now rule 4(m)) does not automatically render late service void).

**B.    Defendants Ballard, Lyttle, Rider, Vamfossien and Kincaid**

In his amended complaint, the plaintiff adds defendants who are employees of the Mt. Olive Correctional Complex, located in Fayette County, West Virginia. Presumably, the events giving rise to any cause of action by these defendants occurred at the Mt. Olive Correctional Complex. Fayette County, West Virginia, is within the jurisdiction of the United States District Court for the Southern District of West Virginia. Therefore, any claims arising against defendants Ballard, Lyttle, Rider, Vamfossien and Kincaid are not proper before this court and should be dismissed without prejudice to the plaintiff's right to raise those claims in the Court of appropriate jurisdiction. See 28 U.S.C. §§ 1404(a) and 1406(a).

**C.    Defendants Waid and Rubenstein**

8

Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, "[a] pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim *showing that the pleader is entitled to relief*, and (3) a demand for judgment for the relief the pleader seeks." (Emphasis added). "And, although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant." Migdal v. Rowe Price-Fleming International, Inc., 248 F.3d 321, 326 (4th Cir. 2001) (citation and internal quotations omitted).

In the instant case, the plaintiff makes no specific allegations of a violation of any constitutional right against defendants Waid or Rubenstein. Instead, it appears that the plaintiff merely names Ms. Waid in her official capacity as the Warden of the Huttonsville Correctional Center and Mr. Rubenstein in his official capacity as the Director of the West Virginia Division of Corrections. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. Id. at 166. In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. Id. (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978)).

In this case, the plaintiff fails to assert that a policy or custom of the entity played a part in the alleged violation of his constitutional rights. Accordingly, the plaintiff cannot maintain his claim against defendants Waid or Rubenstein unless he can establish supervisory liability with regard to

those defendants.

In Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990), the Fourth Circuit recognized that supervisory defendants may be liable under § 1983 if the plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." In so finding, the Court recognized that "[s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." Id. Nonetheless, a plaintiff cannot establish supervisory liability merely by showing that a subordinate was deliberately indifferent to his needs. Id. Rather, the plaintiff must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. Id.

Here, the plaintiff has failed to allege, much less establish, that defendants Waid and Rubenstein tacitly authorized or were indifferent to an alleged violation of the plaintiff's constitutional rights. Accordingly, the plaintiff cannot maintain a claim against defendants Waid and Rubenstein and those individuals should be dismissed from this action with prejudice.

**D.    Defendant Gregg**

In the complaint, the plaintiff asserts, at best, that defendant Gregg denied his administrative grievances. However, an individual's involvement in the coordination or denial of an inmate's administrative remedy complaints, is not the type of personal involvement required to state a claim under § 1983. See Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003).

In addition, the plaintiff asserts that defendant Gregg threatened him. However, "even the most abusive verbal attacks do not violate the constitution." Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979). Nor do words or threats amount to assault under 42 U.S.C. §1983. Pierce v. King, 918 F.Supp. 932 (E.D.N.C. 1996), aff'd, 131 F.3d 136 (4th Cir. 1997), cert. granted and jdgmt. vacated on other grounds, 525 U.S. 802 (1998).

Accordingly, the plaintiff has failed to state a claim against defendant Gregg and that individual should be dismissed with prejudice as a defendant in this action.

### E. Defendants Hipes and Warner

In the complaint, the plaintiff asserts that defendants Hipes and Warner harassed and retaliated against him for the filing of grievances.

In order to sustain a claim based on retaliation, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994). Therefore, "*in forma pauperis* plaintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked conclusory allegations of reprisal to survive [§ 1915(e)(2)(B) ]." Id. Furthermore, claims of retaliation are treated with skepticism in the prison context. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir.1996). Additionally, "a plaintiff alleging that government officials retaliated against her in violation of her constitutional rights must demonstrate, *inter alia,* that she suffered some adversity in response to her exercise of protected rights." American Civil Liberties Union of Maryland, Inc. v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir. 1993).

First, inmates do not have a constitutional right to participate in grievance procedures.

Adams, 40 F. 3d at 75. Thus, the plaintiff can state no retaliation claim regarding the filing of his grievances. In addition, the plaintiff's claims of harassment and retaliation are conclusory and self-serving. The plaintiff makes no specific claims of any kind and fails to show how he was injured by the alleged harassment and retaliation. Instead, the plaintiff merely asserts that he was harassed and retaliated against. Such uncorroborated and unsubstantiated claims, without a showing of any injury, are not sufficient to establish a claim of constitutional dimension. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (in order to establish liability under § 1983, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988) (same); see also Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown).

Accordingly, the plaintiff's harassment and retaliation claims against defendants Hipes and Warner should be dismissed with prejudice.

**F.   Defendants John and Jane Doe**

In the complaint, the plaintiff names John and Jane Doe as defendants in this action. However, the plaintiff makes no allegations against any unknown named persons in either the body of the complaint or any of his exhibits or subsequently filed pleadings. Accordingly, pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, the plaintiff's claims against John and Jane Doe are insufficiently pled and should be dismissed.

**G.   The Plaintiff's Religious Claims**

In his statement of facts, the plaintiff alleges various violations of his right to freely practice his religion. However, the undersigned takes judicial notice of the plaintiff's case number 3:08cv61

currently before this court. In that case, the plaintiff makes the same allegations that he attempts to raise here in his statement of facts. That case is now before the district judge on a report and recommendation by the magistrate judge, which recommends that the West Virginia Division of Corrections be made to answer the plaintiff's various religious discrimination complaints. Accordingly, the claims made in the plaintiff's statement of facts are will be addressed in case number 3:08cv61 and should be dismissed from this case.

## V. Recommendation

For the reasons set forth herein, the undersigned recommends that the defendants' Motion to Dismiss (dckt. 15) be **DENIED**. Moreover, the undersigned further recommends that the plaintiff's complaint (dckt. 1) be **DISMISSED** under 28 U.S.C. §§ 1915(e) and 1915A for the failure to state a claim.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court, written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

Dated: February 24, 2009.

                                          *John S. Kaull*
                                          JOHN S. KAULL
                                          UNITED STATES MAGISTRATE JUDGE